**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CYBERSETTLE, INC.,                  :
                                    :       CIVIL ACTION NO. 04-4744 (MLC)
        Plaintiff,                  :
                                    :       **MEMORANDUM OPINION**
        v.                          :
                                    :
NATIONAL ARBITRATION FORUM,         :
INC.,                               :
                                    :
        Defendant.                  :
_____ :

**COOPER, District Judge**

Plaintiff, Cybersettle, Inc. ("Cybersettle"), commenced this action against defendant, National Arbitration Forum, Inc. ("NAF") alleging, inter alia, that (1) NAF's Automated Negotiation System ("ANS") infringes upon its United States Patent No. 6,330,551 (the "'551 patent"), and (2) NAF's infringement is willful. (Amended Compl., at 4.) Cybersettle requests that this Court permanently enjoin NAF "from infringing, inducing others to infringe, or contributing to the infringement of the '551 patent" pursuant to 35 U.S.C. § ("Section") 283. (Id.) NAF filed counterclaims against Cybersettle seeking, inter alia, a judgment declaring that (1) the claims of the '551 patent are invalid and unenforceable, and (2) NAF's ANS does not infringe any of the '551 patent's claims. (Answer to First Amended Compl., Separate Defenses & Counterclaims, at 11.)

The parties entered into a voluntary stipulation on February 6, 2006, pursuant to which Cybersettle agreed to forego seeking

damages as a result of NAF's alleged infringement.  (Dkt. entry nos. 39 & 41.)  Also on February 6, 2006, the parties entered into a stipulation and order of dismissal pursuant to which NAF agreed to dismiss with prejudice all of its defenses and counterclaims that pertained to the validity and enforceability of the '551 patent.  (Dkt. entry nos. 40 & 42.)  Thus, the only issues remaining in this action are whether (1) NAF infringed the '551 patent, (2) such infringement was willful, and (3) this is an "exceptional" case under Section 285.  (2-6-06 Stip., at ¶ 6.)

Cybersettle now moves pursuant to Federal Rule of Civil Procedure ("Rule") 56 for summary judgment on its infringement claim only.  (Dkt. entry no. 46.)  Specifically, Cybersettle requests that this Court enter a judgment declaring that two versions of NAF's ANS, ANS 3 and ANS 1x, infringe claims 1, 2, 3, 6, and 27 of its '551 patent.  (Pl. Br., at 1.)  Cybersettle also requests that this Court permanently enjoin NAF from "operating, making, using, offering to sell, selling, importing or exporting any automated dispute resolution system or process that infringes these claims of the '551 patent."  (Id. at 30.)  Moreover, NAF cross-moves for summary judgment on its request that this Court enter a judgment declaring that no version of its ANS infringes the '551 patent.  (Dkt. entry no. 56.)  The Court, for the reasons stated herein, will (1) grant Cybersettle's motion, (2) permanently enjoin NAF from infringing the '551 patent, and (3) deny NAF's cross motion.

**BACKGROUND**

## I.   The Parties

Cybersettle is a New York corporation with its principal place of business in White Plains, New York.  (Amended Compl., at ¶ 3.)  It is "a world leader in accelerated dispute resolution . . . [that] has handled over 90,000 transactions and facilitated over $600 million in settlements, including bodily injury, and other types of insurance claims, including arising from automobile accidents."  (Id. at ¶ 5.)  Cybersettle holds the '551 patent entitled "Computerized Dispute Resolution System and Method".  (Id. at ¶ 6.)

NAF is a Minnesota corporation, which operates in Minnesota and New Jersey, among other locations.  (Id. at ¶ 4.)  NAF is also engaged in the dispute resolution business.  (Id. at ¶ 7.)  It describes itself as "a neutral administrator of arbitration, mediation and various other forms of alternative dispute resolution."  (Def. Br., at 6.)  In December 2003, the New Jersey Department of Banking and Insurance awarded NAF a three-year "Alternative Dispute Resolutions Services Contract" pursuant to which NAF agreed to administer arbitrations for No-Fault Insurance Personal Injury Protection ("PIP") disputes under New Jersey's Automobile Insurance Cost Reduction Act of 1988.  (Id.; Amended Compl., at ¶ 7.)  NAF reported that it expected to administer approximately 20,000 cases per year under this

contract.  (Amended Compl., at ¶ 7.)  One of the services NAF
provides in connection with this contract is its ANS.  (Id. at ¶
8.)

## II.  **Cybersettle's '551 Patent**

The '551 patent "discloses and claims a computerized system
for automated dispute resolution and a method of resolving
disputes by using that system." (Pl. Br., at 4.)  Preferably,
the system involves a central processing unit receiving
information corresponding to three settlement offers and a
claimant entering three demands "in a plurality of communications
with the system over a period of time, for example, 30 days."
(Ladow Decl., Ex. 1, '551 patent, at col. 2, lines 3-12.)  The
information corresponding to the series of demands and the series
of offers is compared "on a round-by-round basis in accordance
with preestablished conditions."  (Id. at col. 2, lines 11-12.)
A round consists of one offer and one demand to which a
predetermined criterion or algorithm is applied.  (Pl. Br., at 4-
5.)  The system communicates the results of the comparison to the
parties and indicates whether a settlement has been reached.
(Ladow Decl., Ex. 1, '551 patent, at col. 2, lines 12-17.)
"Where the demand and offer intersect in accordance with
preestablished conditions, settlement is reached."  (Id. at col.
4, lines 54-56.)  The '551 patent's specification, which is
entitled "Detailed Description of the Invention", explains:

4

> Rounds may preferably be completed in one, two or three calls or computer sessions within a given time period, preferably thirty days.  Once entered, the system instantly compares each demand to the settlement offer for each Round.  If the demand and offer match or are within some preestablished range, the case is settled.  For example, if the offer is within twenty percent of the demand, the claim is settled in accordance with a preestablished formula, for example the claim is settled for the median amount.

(Id. at col. 8, lines 40-47.)  The specification further explains that the system communicates the comparison results following each round.  (Id. at col. 9, lines 50-52.)  If a particular round does not result in a settlement, "the comparison means goes on to the next round and the previous round that did not result in a settlement is deleted permanently."  (Id. at col. 9, lines 48-50.)

The '551 patent contains 200 claims, but only claims 1, 2, 3, 6, and 27 are at issue here.  (Pl. Br., at 4.)  Of those claims, only claims 1 and 27 are independent; claims 2, 3, and 6 depend upon claim 1.  (Id. at 4.)

Claims 1, 2, 3, and 6 provide:

1.   A computer executable method for dispute resolution, operative to control a computer and stored on at least one computer readable medium, the method when executed comprising:
 a) receiving a plurality of demands from a first party for a claim;
 b) receiving a plurality of settlement offers from a second party for the claim;
 c) preventing disclosure of the demands to the second party, and preventing disclosure of the settlement offers to the first party;
 d) calculating differences between the demands and the settlement offers in rounds, each of

5

the differences being calculated in a round
using one demand and one settlement offer,
the one demand and the one settlement offer
being unequal in value;
    e)   determining whether any of the differences
fall within at least one predetermined
criterion;
    f)   if any of the differences fall within the at
least one predetermined criterion,
transmitting a message to the first party and
the second party that the claim is resolved;
and
    g)   if the differences do not fall within the at
least one predetermined criterion,
transmitting a message that the claim has not
been resolved.
2.   The method of claim 1 wherein the one demand is
received before the one settlement offer.
3.   The method of claim 1 wherein the one demand is
received after the one settlement offer.
. . . .
6.   The method of claim 1 wherein d), e), f) and g)
are performed after receiving less than a maximum
specified number of the plurality of demands.

(Ladow Decl., Ex. 1, '551 patent, at col. 19, lines 29-58 & 65-

67.) These claims were not the subject of a substantive

rejection or objection by the patent examiner, and thus, were not

substantively amended during the patent prosecution. (Pl. Br.,

at 8.)

Claim 27 provides:

27.  A dispute resolution method for resolving a claim
between two adverse parties in rounds, the method
comprising:
    testing a pair of non-equal values in one of at
least two rounds using a processor, one value
in the pair submitted by one of the two
adverse parties for the claim; and
    calculating a binding settlement payment of an
amount at least equal to a lower of the pair
of the non-equal values, when a settlement
determination algorithm used in the testing

> is satisfied by the pair of the non-equal
> values.

(Ladow Decl., Ex. 1, '551 patent, at col. 21, lines 57-67.)
Claim 27 was rejected during the patent prosecution, but after
the phrase "in one round" was deleted and replaced with "in one
of at least two rounds", the claim was allowed.  (Pl. Br., at 9.)

## III. NAF's ANS

NAF's first version of its ANS permitted parties to a PIP
dispute to submit one or more confidential demands and one or
more confidential offers at a time.  (Def. Br., at 7.)  This
version was called ANS 3.  (Id.)  ANS 3 compared "the one pair of
demands and offers to determine if the amounts were within a pre-
determined success criteria (for example a settlement would be
achieved if the demand and offer fell within a certain dollar
amount agreed upon by the parties before the demand and offer
were submitted)."  (Id.)  If the predetermined success criteria
were satisfied, ANS 3 notified the parties that a settlement had
been reached and listed the settlement amount.  (Id.)  If,
however, the predetermined success criteria were not satisfied,
ANS 3 notified the parties that no settlement had been reached
and invited them to repeat the process.  (Id.)

NAF took ANS 3 offline after it identified potential issues
with Cybersettle's '551 patent.  (Id. at 7-8.)  Thereafter, NAF
introduced a new version of its ANS, ANS 1x.  (Id. at 8.)  Under
ANS 1x, one demand and one offer were submitted, and before

7

subsequent demands and offers could be submitted (1) the ANS had to determine that the initial demand and offer did not result in a settlement, (2) the first party had to decide to reenter the ANS to negotiate again, and (3) the second party had to reenter the ANS to negotiate again.  (Id.)  Nevertheless, NAF eventually disabled ANS 1x as well after Cybersettle amended its complaint to allege that ANS 1x infringed its '551 patent.  (Id.)  NAF then created ANS 1, which operates in the same manner as ANS 1x, except that it "precludes the parties from re-entering the ANS system for any additional sessions if a settlement is not reached in the first round."  (Id.)

Cybersettle only alleges that ANS 3 and ANS 1x infringe the '551 patent.  (See Amended Compl.)

### DISCUSSION

NAF contends that the '551 patent only protects "an automated system that deals with multiple rounds of one negotiation." (Def. Br., at 1.)  In other words, NAF argues that the '551 patent "necessarily requires the parties to the negotiation to submit more than one demand and more than one offer, whether or not the first round is successful." (Id. at 3.)  In contrast, Cybersettle contends that the system contemplated by its '551 patent "need not necessarily be capable of accepting multiple bids at the outset, but rather that it be capable of accepting one offer and one demand either on a round by round basis alone or in combination with the ability to accept

multiple bids." (Pl. Br., at 1.) Based on this interpretation, Cybersettle alleges that NAF's ANS 3 and ANS 1x infringe claims 1, 2, 3, 6, and 27 of the '551 patent. (Id. at 4.) However, since claims 1 and 27 are independent and claims 2, 3, and 6 are dependent, the attention of the parties and of the Court on this motion has been focused primarily upon construction of claims 1 and 27. (Id.; Def. Br., at 1.)

## I.   Applicable Legal Standards

### A.   Summary Judgment Standard

Rule 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c)  The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant has met this prima facie burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).  A non-movant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion.

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  <u>Anderson</u>, 477 U.S. at 249.  Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]."  <u>Id.</u> at 252.  "By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Id.</u> at 247-48 (emphasis in original).  A fact is material only if it might affect the action's outcome under governing law.  <u>Id.</u> at 248.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  <u>Id.</u> at 249-50 (internal citations omitted).

**B.   Infringement Standard**

An infringement inquiry is a two-step process.  First, the Court must determine the scope and meaning of the patent claims as a matter of law.  <u>Markman v. Westview Instruments, Inc.</u>, 52

F.3d 967, 979 (Fed. Cir. 1995), <u>aff'd</u>, 517 U.S. 370 (1996).
Second, the allegedly infringing product is compared to each
claim at issue to determine whether the product contains every
limitation contained in each claim or the substantial equivalent
of any limitation not literally present.  <u>Laitram Corp. v.
Rexnord, Inc.</u>, 939 F.2d 1533, 1535 (Fed. Cir. 1991).

There is a "'heavy presumption' that a claim term carries
its ordinary and customary meaning." <u>CCS Fitness Inc. v.
Brunswick Corp.</u>, 288 F.3d 1359, 1366 (Fed. Cir. 2002).  The
ordinary and customary meaning of a claim term is the meaning a
"person of ordinary skill in the art in question" would give to
such term on the effective filing date of the patent application.
<u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1313 (Fed. Cir. 2005).
Such a person is deemed to interpret the claim term in the
context of the entire patent, including the specification.  <u>Id.</u>
A claim term should generally be given its ordinary meaning
unless the patentees "clearly set forth a definition of the
disputed claim term in either the specification or prosecution
history." <u>CSC Fitness Inc.</u>, 288 F.3d at 1366.  Thus, words in a
claim are generally given their ordinary and customary meaning in
the absence of a contrary indication in the patent specification
or file history.  <u>Wolverine Worldwide, Inc. v. Nike, Inc.</u>, 38
F.3d 1192, 1196 (Fed. Cir. 1994).

When interpreting an asserted patent claim, the Court should look first to the intrinsic evidence of record, which includes the patent's claims, the patent's specification, and the complete prosecution history.  Markman, 52 F.3d at 979.  Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language.  Vitronic Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1583 (Fed. Cir. 1996).  In reviewing this intrinsic evidence, the Court considers the context in which a term is used both within the claim at issue and within the claims that are not at issue.  Phillips, 415 F.3d at 1314.  Further, the Court must interpret claim terms in light of the specification.  Id. at 1315 (noting that specification is highly relevant to claim construction and usually dispositive).

The Court, in addition to reviewing the specification, should also consider the patent's prosecution history.  Id. at 1317; Graham v. John Deere Co., 383 U.S. 1, 33 (1966) ("It is, of course, well settled that an invention is construed not only in the light of the claims, but also with reference to the file wrapper or prosecution history in the Patent Office.") The doctrine of "prosecution history estoppel" requires that a patent's claims be interpreted in light of all United States Patent & Trademark Office ("PTO") proceedings that occurred during the patent application process.  Festo Corp. v. Shoketsu Kinzoku Co., Ltd., 535 U.S. 722, 733 (2002) (noting that

12

"prosecution history estoppel" ensures that claims are interpreted in light of those claims that were cancelled or rejected).  Accordingly, the prosecution history is useful in claim construction because it demonstrates how the inventor limited the invention during the course of the patent prosecution, and thus, narrowed the scope of the ultimately patented product.  <u>Phillips</u>, 415 F.3d at 1317.  Nevertheless, because the prosecution history reflects the ongoing negotiations between the inventor and the PTO, it is often less clear and less useful than the specification.  <u>Id.</u>

The ordinary meaning of claim language as understood by a person of skill in the art will be readily apparent to a lay judge in some instances, after he or she reviews the intrinsic evidence, and claim construction will involve simply applying the widely accepted meanings of commonly understood words.  <u>Id.</u> at 1314.  In such circumstances, general purpose dictionaries may be helpful.  <u>Id.</u>  However, "heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification."  <u>Id.</u> at 1321.

## II.   Legal Standards Applied Here

### A.   Claim Construction

#### 1.   The Ordinary Meaning of Claims 1, 2, 3, 6, and 27

The claims at issue here do not contain highly technical language.  Accordingly, the intrinsic evidence alone is sufficient to determine the legally operative meaning of the disputed claim language.  See Vitronic Corp., 90 F.3d at 1583.

Claim 1 describes a computer executable method for dispute resolution involving receipt of "a plurality of demands from a first party for a claim" and "a plurality of settlement offers from a second party for the claim", and the differences between the demands and the settlement offers "being calculated in a round using one demand and one settlement offer".  (Ladow Decl., Ex. 1, '551 patent, at col. 19, lines 29-54.)  There is no language in claim 1 suggesting that the method described requires the parties to submit more than one demand or settlement offer even if the first round of calculations results in a settlement. Further, there is no temporal limitation contained in claim 1 requiring that the plurality of demands and settlement offers contemplated must be submitted at the outset of the negotiation. Instead, the only temporal limitation contained in claim 1 is that the differences between the demands and settlement offers must be calculated "in a round".  Thus, the method described in claim 1 permits the parties to enter demands and settlement

14

offers whenever they choose over a set period of time, and calculates the difference between one demand and one settlement offer on a round-by-round basis.  A settlement may be reached in round one, and thus, there would be no need for the parties to submit subsequent demands and settlement offers.  Therefore, this Court finds that claim 1 contemplates a dispute resolution method that is capable of, but does not require, multiple rounds.[1]

This Court also construes claim 27 as covering a dispute resolution system with the ability to conduct multiple rounds. Claim 27 describes a method for resolving a dispute between two adverse parties by "testing a pair of non-equal values in one of at least two rounds" and "calculating a binding settlement payment . . . when a settlement determination algorithm used in the testing is satisfied."  (Id. at col. 21, lines 57-67.) Similar to claim 1, there is no language in claim 27 requiring the parties participating in the dispute resolution method to submit more than one demand or more than one settlement offer at the outset.  Further, the "in one of at least two rounds" language suggests that the patented system must be capable of conducting more than one round of testing using the settlement determination algorithm.  It does not, however, suggest that the

---

[1] Claims 2, 3, and 6 depend on claim 1.  We find that claims 2, 3, and 6 are consistent with our construction of claim 1. Therefore, this Court's holding with respect to the proper construction of claim 1 applies equally to claims 2, 3, and 6.

system must conduct more than one round to be covered by the patent.  Thus, claim 27 describes a dispute resolution system that permits, but does not require, the parties to submit multiple demands and multiple settlement offers for testing, particularly when the parties reach a settlement in the first round of testing.

### 2.   The Specification

A review of the '551 patent's specification also suggests that claims 1, 2, 3, 6, and 27 do not require the parties to utilize the multi-round feature of the computerized dispute resolution system, but instead only require that the system be capable of multiple rounds.  See Phillips, 415 F.3d at 1315 (noting that specification "is always highly relevant to the claim construction analysis").  Specifically, the specification contains the following statements that support this Court's construction of the claims at issue:

> The system includes . . . comparison means for comparing the information corresponding to the series of demands and the series of offers on a round-by-round basis in accordance with preestablished conditions. (Ladow Decl., Ex. 1, '551 patent, at col. 4, lines 26 & 38-41 (emphasis added).)

> The computer performs its functions and the result [sic] are reported to the parties as they occur in real time without waiting.  (Id. at col. 5, lines 38-40 (emphasis added).)

> [T]he claimant's attorney will preferably have three Rounds, or opportunities, to settle a claim, which may be entered over time or all at once.  (Id. at col. 7, lines 65-67 (emphasis added).)

16

Rounds may preferably be completed in one, two, or
three calls or computer sessions within a given time
period, preferably thirty days.  <u>Once entered, the
system instantly compares each demand to the settlement
offer for each Round.</u>  If the demand and offer match or
are within some preestablished range, the case is
settled.  (<u>Id.</u> at col. 8, lines 39-47 (emphasis
added).)

If the demand and the corresponding offer by the
sponsor for that round are within the preestablished
conditions, the user is preferably presented with a
case acceptance screen.  If the demand and the
corresponding offer are not within the preestablished
conditions, the user is preferably presented with a
link to the next round screen, if a round is available,
i.e. the previously agreed number of rounds of demands
has not been used.  (<u>Id.</u> at col. 15, lines 54-61.)

These statements indicate that the '551 patent contemplates

a system where multiple demands and offers can be submitted

either at the outset, or over time.[2]  These statements further

indicate that once a single demand and a single offer are

entered, the system compares them instantly and in real time and

---

[2] For example, Claim 40 describes a method involving:
  receiving a case identifier and at least two monetary
    submissions for the first entity [to a case involving
    a claim];
  associating at least one proposed settlement amount
    submitted by a second entity with respect to the
    claim with at least one of the at least two monetary
    submissions;
  processing a proposed settlement amount and one of the
    at least two monetary submissions in accordance with
    a specified algorithm to obtain a result; and
  notifying the first entity that a settlement of the
    claim has been reached and of a payment amount, when
    the result meets a criterion agreed to by the first
    entity, without ever informing the first entity of
    the at least one proposed settlement amount.
(Ladow Decl., Ex. 1, '551 patent, at col. 22, lines 54-67 & col.
23, lines 1-2).

notifies the parties as to whether a settlement was reached.  If, however, the demand and offer do not match or are not within the preestablished conditions, then the parties are able to participate in subsequent rounds.  Accordingly, the specification supports this Court's conclusion that claims 1, 2, 3, 6, and 27 should be read as describing a system that is designed, at the outset, to permit and be capable of conducting multiple rounds, but that system does not require that more than one round actually occur.

### 3.  The Patent Prosecution History

This Court's construction of claims 1, 2, 3, 6, and 27 is further supported by the patent prosecution history.  See Festo Corp., 535 U.S. at 733.  The original application for the '551 patent was filed on August 6, 1998.  (Ladow Decl., Ex. 1, 8-9-99 Preliminary Amendment, at 1.)  The application was amended on August 9, 1999, to delete pending claims 1 through 10 and insert new claims 11 through 170.  (Id.)  Thereafter, the PTO issued an Office Action in which the patent examiner objected to, inter alia, claim 11 due to certain "informalities".  (Ladow Decl., Ex. 1, 9-23-99 Office Action, at 3.)  Nevertheless, the patent examiner stated that claims 11 through 17 would be allowable if rewritten to overcome the informalities because

> [t]he prior art, taken as a whole, fails to teach or
> suggest a computer executable method for dispute
> resolution . . . comprising: (a) receiving a plurality
> of demands from a first party for a claim; (b)

18

> receiving a plurality of settlement offers from a
> second party for the claim; (c) preventing disclosure
> of the demands to the second party, and preventing
> disclosure of the settlement offers to the first party;
> (d) calculating differences between the demands and the
> settlement offers in rounds, each of the differences
> being in a round using one demand and one settlement
> offer, the one demand and the one settlement offer
> being unequal in value; (e) determining whether any of
> the differences fall within a predetermined criterion;
> (f) if any of the differences fall within the
> predetermined criterion, transmitting a message to the
> first party and the second party that the claim is
> resolved; and (g) if the differences do not fall within
> the predetermined criterion, transmitting a message
> that the claim has not been resolved.

(Id. at 8-9.)  Thus, the patent examiner indicated that the

application's proposed method of calculating the difference

between demands and settlement offers in rounds using

predetermined criterion, with each round requiring one demand and

one settlement offer, was patentable.  The patent examiner did

not indicate, however, that such method must require multiple

rounds or that the parties must submit the "plurality" of demands

or "plurality" of settlement offers at the outset of their

negotiation.

    The patent application was amended on October 18, 1999 in

response to the Office Action.  (Ladow Decl., Ex. 1, 10-18-99

Amendment and Response.)  Thereafter, the PTO issued a Notice of

Allowance and Issue Fee Due, which allowed claims 11 through 161

but renumbered them as claims 1 through 151.  (Ladow Decl., Ex.

1, 11-2-99 Notice of Allowance and Issue Fee Due, at 1, 20.)

However, less than one year later, the PTO withdrew its allowance

19

of the '551 patent "due to unpatentability of one or more claims" because "new prior art [was] found". (Ladow Decl., Ex. 1, 8-9-00 Notice of Withdrawal from Issue under 37 C.F.R. 1.313(b).) Shortly after the withdrawal, the patent examiner rejected a number of the '551 patent's claims, including claim 27. (Ladow Decl., Ex. 1, 9-26-00 Office Action, at 1.)  The patent examiner explained that claim 27 was unpatentable based on an article by Steven J. Brams and Samuel Merrill, III ("Brams and Merrill"). That article discussed dispute resolution methods that existed prior to the patent application, including a method involving two adverse parties for a claim submitting nonequal values in a single round, and "calculating a binding settlement payment of an amount at least equal to a lower of the pair of non-equal offers . . . when a settlement determination algorithm used in the testing is satisfied by the pair of non-equal values." (Id. at 4.)  However, the patent examiner explained that claims 1 through 7 still were allowed because the methods Brams and Merrill discussed did not involve the parties submitting a plurality of demands or a plurality of settlement offers. (Id. at 17.)

Several of the '551 patent's claims were amended on December 4, 2000, and additional claims were added to the application, bringing it to 200 total claims. (Ladow Decl., Ex. 1, 12-4-00 Amendment and Response, at 1-13.)  Claim 27 was amended "to recite, inter alia, 'at least two rounds'". (Id. at 15.)  In

20

response, the PTO issued a new Notice of Allowance & Issue Fee
Due, which allowed all of the '551 patent's 200 claims.  (Ladow
Decl., Ex. 1, 2-27-01 Notice of Allowance and Issue Fee Due.)
The patent examiner noted that claim 27, among others, was
allowed because, <u>inter alia</u>,

> Brams and Merrill do not disclose that the claim is
> resolved in rounds, nor do they disclose testing a pair
> of non-equal values in one of at least two rounds.
> Multiple rounds of negotiation are known, but the prior
> art of record fails to teach or suggest combining such
> multiple rounds of negotiation with the method of Brams
> and Merrill, which involves Final Offer Arbitration and
> related techniques, and thus does not readily
> incorporate the use of multiple rounds.

(<u>Id.</u> at 4.)  Thus, the patent examiner explained that (1) Brams
and Merrill disclosed a prior art method of testing a pair of
non-equal values in a single round using a settlement
determination algorithm, and (2) employing multiple rounds of
negotiation (<u>i.e.</u> "shuttle diplomacy") without applying a
predetermined criterion or a settlement algorithm to the demand
and offer submitted in each round is also known in prior art.
However, the patent examiner concluded that claim 27 was
allowable because it combines the method discussed by Brams and
Merrill with the concept of employing multiple rounds of
negotiation.

     This patent prosecution history suggests that the '551
patent covers a system that is capable of performing multiple
rounds of negotiation using a settlement algorithm or

predetermined criterion.  This history also suggests that the '551 patent does not require the negotiating parties to either submit multiple bids or multiple settlement offers at the outset, or engage in subsequent rounds even if settlement is reached in the first round.  The examiner expressly noted that Brams and Merrill described a dispute resolution system that <u>necessarily</u> involved a single round of bids because the parties were only permitted to submit one demand and one settlement offer.[3]  The prosecution history thus indicates that claims 1 and 27 describe a system that is capable of performing multiple rounds of mathematical comparison between a series of demands and offers but also enables the parties to settle in a single round.

The Court has considered the claims at issue in light of the specification and the patent prosecution proceedings.  <u>See Phillips</u>, 415 F.3d at 1317 (noting that courts should consider both specification and patent prosecution history when construing claims).  We construe independent claims 1 and 27 of the '551 patent to cover a computerized method or system that allows the parties to submit a series of demands and a series of offers in

---

[3] The examiner explained, "[m]ultiple values (of offers and demands) and multiple rounds of negotiation are known, but the prior art of record, taken as a whole, fails to teach or suggest incorporating these features into a system like that of Brams and Merrill, whose Final Offer Arbitration method and related methods pair a single demand with a single offer of settlement and <u>necessarily</u> involve a single round of mathematical comparison." (Ladow Decl., Ex. 1, 2-27-01 Notice of Allowance and Issue Fee Due, at 20 (emphasis added).)

22

at least two rounds, but also allows the parties to settle in the first round, as long as the method does not restrict the parties to only one round.

**B.   Comparison of NAF's ANS 3 and ANS 1x to the '551 Patent**

This Court, after construing the claims at issue, now focuses its analysis on whether NAF's ANS 3 and ANS 1x literally infringe the claims at issue.  As discussed <u>supra</u>, this Court construes claims 1 and 27 as describing a dispute resolution system that enables the parties to either submit multiple demands and offers at the outset of their negotiation or submit demands and offers on a round-by-round basis.  Given this construction, NAF's ANS 3 and ANS 1x contain every limitation contained in claims 1 and 27 of the '551 patent, and thus, literally infringe those claims.  <u>See</u> <u>Laitram Corp.</u>, 939 F.2d at 1535.

Claim 1 describes a computer-based method of dispute resolution that involves one party to a claim submitting one or more demands and a second party to a claim submitting one or more settlement offers.  (Ladow Decl., Ex. 1, '551 patent, at col. 19, lines 29-36.)  Similarly, ANS 3 and ANS 1x are computer-based systems that permit the parties to a PIP dispute to submit one or more confidential demands and one or more confidential settlement offers.  (<u>See</u> Def. Br., at 7.)  The ANS 3 permits the parties to submit more than one demand and settlement offer at the outset, whereas, the ANS 1x permits the parties to submit only a single

demand and a single settlement offer at the outset and then repeat the process in subsequent rounds.  (Id. at 7-8, 28.)  Further, in both the methods described in claim 1 and ANS 3 and ANS 1x the demands and settlement offers submitted remain confidential throughout the process.  (Id. at 7; Ladow Decl., Ex. 1, '551 patent, at col. 19, lines 37-39.)  As in the method described in claim 1, the ANS 3 and ANS 1x "compare the one pair of demands and offers to determine if the amounts were within a pre-determined success criteria".  (Def. Br., at 7; see Ladow Decl., Ex. 1, '551 patent, at col. 19, lines 40-44 ("calculating the differences between the demands and the settlement offers in rounds").)  Finally, the method described in claim 1 transmits a message to the parties after each round indicating whether a settlement has or has not been reached.  (Ladow Decl., Ex. 1, '551 patent, at col. 21, lines 48-53.)  ANS 3 and ANS 1x also perform this function.  (Def. Br., at 7 (explaining that ANS 3 and ANS 1x notify parties of whether predetermined success criteria was satisfied and settlement was reached).)  Therefore, NAF's ANS 3 and ANS 1x possess every limitation contained

in claim 1, and thus, this Court finds that they directly infringe claim 1.[4]

Claim 27 describes a computer-based method of dispute resolution involving the testing of a pair of non-equal values submitted by adverse parties in "one of at least two rounds." (Ladow Decl., Ex. 1, '551 patent, at col. 21, lines 57-62.)  The ANS 3 and ANS 1x also test pairs of non-equal values on a round-by-round basis.  (See Def. Br., at 7.)  Moreover, the claim 27 method calculates "a binding settlement payment of an amount . . . when a settlement determination algorithm used in the testing is satisfied."  (Ladow Decl., Ex. 1, '551 patent, at col. 21, lines 63-67.)  Similarly, ANS 3 and ANS 1x "compare the one pair of demands and offers to determine if the amounts were within a pre-determined success criteria" and notify the parties that a settlement has been reached if the success criteria are met. (Def. Br., at 7.)  Thus, NAF's ANS 3 and ANS 1x also possess every limitation contained in claim 27.  Therefore, in addition

---

[4] The additional limitations imposed by claims 2, 3, and 6 are also infringed by NAF's ANS 3 and ANS 1x.  Specifically, both the ANS 3 and ANS 1x permit (1) receipt of one demand before one settlement offer (claim 2), (2) receipt of one demand after one settlement offer (claim 3), and (3) calculation of the differences between the demands and the offers and transmittals of a message stating whether the claim was or was not resolved prior to receiving the maximum number of the plurality of demands (claim 6).  Thus, because the ANS 3 and ANS 1x infringe claim 1, it follows that they also infringe claims 2, 3, and 6, which are dependent on claim 1 and do not impose any significant additional limitations on claim 1.

to infringing claim 1, this Court finds that ANS 3 and ANS 1x also infringe claim 27 of the '551 patent.

## CONCLUSION

The Court, for the reasons stated *supra*, the Court will (1) grant Cybersettle's motion, (2) permanently enjoin NAF from infringing the '551 patent, and (3) deny NAF's cross motion.  An appropriate order and judgment will be issued.

      s/ Mary L. Cooper

     **MARY L. COOPER**
     United States District Judge